UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SONYA COLE, as Independent Administrator of the Estate of Curtis Cole, Deceased, <br><br> Plaintiff, <br><br> v. <br><br> GRANITE NURSING & REHABILITATION CENTER, LLC and AURORA CARES, LLC, d/b/a Tara Cares, LLC, <br><br> Defendants. | Case No. 22-cv-312-JPG |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the motion of defendants Granite Nursing & Rehabilitation Center, LLC ("Granite Nursing") and Aurora Cares, LLC d/b/a Tara Cares, LLC ("Aurora") to compel arbitration and stay these proceedings (Doc. 7). The defendants point to an arbitration clause contained in admission papers signed by plaintiff Sonya Cole's ("Cole") deceased husband, Curtis Cole, when he was admitted to Granite Nursing. Cole has responded to the motion (Doc. 14).

**I.  Background**

This matter arose following the January 2020 death of Curtis Cole, a resident of a long-term care facility owned and operated by Granite Nursing. Aurora was involved in managing Granite Nursing's facility. Curtis Cole was admitted to Granite Nursing's facility in March 2018 and remained there until shortly before his death, when he was discharged to hospice care.

In this case, Cole asserts that the defendants engaged in abuse or neglect because they did not act reasonably when they knew or should have known Curtis Cole was at high risk for

developing pressure sores and kidney problems.  Specifically, she alleges Granite Nursing failed to provide appropriate personal or medical care, including ensuring that Curtis Cole was turned and repositioned to prevent the development and deterioration of pressure sores.  Specifically with respect to Aurora, Cole asserts that it was negligent in managing Granite Nursing's facility in that the facility was understaffed with unqualified staff and that the policies and procedures were not enforced.  All of these failures, Cole alleges, caused Curtis Cole to develop health problems which caused or contributed to pain and suffering and, ultimately, to his death.

In her representative capacity, Cole brings claims on behalf of the decedent's estate under the Illinois Survival Act, 755 ILCS 5/27-6, for violation of the Illinois Nursing Home Care Act, 210 ILCS 45/1-101 *et seq.* (Count I), and for common law negligence (Counts II & V).  She also brings claims for the benefit of Curtis Cole's surviving kin under the Illinois Wrongful Death Act ("WDA"), 740 ILCS 180/1 *et seq.*, for common law negligence (Counts III and IV).

The defendants now ask the Court to compel Cole to arbitrate all of her claims in this case based on an arbitration clause signed by Granite Nursing and Curtis Cole when he entered the facility in March 2018.  The agreement was part of the admissions packet and was captioned "Jury Trial Waiver and Arbitration Agreement" ("Agreement").  It purports to bind Curtis Cole as well as his "parents, spouse, children, grandchildren, guardian, executor, executrix, administrator, administratrix, personal representative, successor, assigns, agents, attorneys, third-party beneficiaries, insurers, trustees, next friends, legal representatives, heirs and any other person(s) whose claim is derived through [Curtis Cole]." Agreement ¶ 1.  The Agreement further provides that the parties agree, as their exclusive remedy, to submit to binding arbitration "all claims, disputes, and controversies of any kind between the parties arising out of or relating in any way to . . . any service or health care provided by [Granite Nursing] to [Curtis Cole],"

including "any other claim based on any departure from accepted standards of medical, nursing, or health care."  Agreement ¶ 2.

The defendants believe the Agreement contractually binds Cole to arbitrate her claims because they derive from Curtis Cole's claims.  Cole does not really dispute that her claims under the Survival Act must be arbitrated because those are really claims of Curtis Cole that survived his death, but she argues that her wrongful death claims never belonged to her husband such that he could have agreed to arbitrate them, and that she herself never agreed to arbitrate them.

## II.     Analysis

All parties agree that this case is governed by the Federal Arbitration Act ("FAA").  The FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.  The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act."  *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *accord Perry v. Thomas*, 482 U.S. 483, 488 (1987).  The FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2; *see Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443-44 (2006); *Matthews v. Rollins Hudig Hall Co.*, 72 F.3d 50, 53 (7th Cir. 1995).  "This saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an

agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

"Under the [FAA], arbitration may be compelled if the following three elements are shown:  a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005) (citing 9 U.S.C. § 4).  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24-25; *accord Cty. of McHenry v. Ins. Co. of the W.*, 438 F.3d 813, 823 (7th Cir. 2006).  Nevertheless, arbitration is a matter of contract, and a party cannot be forced to arbitrate if they did not agree to do so. *Rent-A-Center, W., Inc. v. Jackson,* 561 U.S. 63, 67 (2010); *see EEOC v. Waffle House, Inc.*, 534 U.S. 279, 293-94 (2002) (EEOC not bound by employee's arbitration agreement with employer).

In invoking the arbitration clause, the defendants argue that Cole is bound by the Agreement Curtis Cole signed.  They concede that under Illinois law WDA claims are not strictly derivative of the decedent's claims.  However, they note that Illinois law allows a decedent to release his claims before his death and thereby release claims his surviving kin have for wrongful death.  The defendants argue that giving effect to a pre-death release and not a pre-death agreement to arbitrate impermissibly discriminates against arbitration agreements where the FAA is very clear that arbitration agreements are to be treated on equal footing with any other agreement.

Cole concedes that Curtis Cole had the authority to agree to arbitrate his own claims and the Survival Act claims that derive from them.  Accordingly, she does not object to compelled

4

arbitration of Counts I, II, and V, all brought under the Survival Act. However, she asserts that Curtis Cole could not bind his surviving kin to also arbitrate their claims under the WDA and that she herself never agreed to arbitrate. Without her agreement to arbitrate, she maintains, she cannot be forced to do so.

The parties' arguments center on an Illinois Supreme Court decision directly on point, and a later United States Supreme Court decision that calls into question whether the FAA preempts the rule established in that Illinois decision.

### A. *Carter*

The Illinois Supreme Court case is *Carter v. SSC Odin Operating Co.*, 976 N.E.2d 344 (Ill. 2012). That case involved similar arbitration agreements signed by the legal representative of a nursing home resident and the resident herself when she entered the nursing home. *Id.* at 348. The legal representative was also the personal representative of the resident's estate after the resident died, in which capacity she brought claims against the nursing home under the Survival Act and the WDA. *Id.*

In *Carter*, the Illinois Supreme Court thoroughly explained the nature of a wrongful death claim. *Id.* at 353-58. It is a cause of action created by statute for pecuniary losses suffered by a decedent's spouse and next of kin because of the decedent's death. *Id.* at 354. A wrongful death claim must be brought, if at all, by the decedent's personal representative not as a party in interest but as a statutory trustee for the benefit of the real parties in interest—the deceased's surviving kin. *Id.* A wrongful death claim does not ever belong to the decedent and only comes into being upon the decedent's death, so it is not part of the decedent's estate such that the decedent may limit the claim. *Id.* at 356-57, 360. This is in contrast to a claim under the Survival Act, which allows a cause of action the decedent had before his death to become part of

5

the decedent's estate and to be maintained or continued by the estate's representative. *Id.* at 354.

Nevertheless, a wrongful death claim is in a sense derivative of the decedent's claims in that the WDA itself conditions the claim on the decedent's ability "to maintain an action and recover damages" for his injury from the same person had he not died. *Id.* at 358; 740 ILCS 180/1 (wrongful death claim may be brought "[w]henever the death of a person shall be caused by wrongful act . . . and the act. . . is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages. . . ."). The *Carter* court noted that where the decedent's claim would have been barred had she lived, there could be no WDA claim following her death. *Carter*, 976 N.E.2d at 358 (citing *Mooney v. City of Chi.*, 88 N.E. 194 (Ill. 1909) (pre-death release of claims); *Varelis v. Nw. Mem'l Hosp.*, 657 N.E.2d 997, 1000 (Ill. 1995) (pre-death personal injury judgment)); *Biddy v. Blue Bird Air Service,* 30 N.E.2d 14, 18 (Ill. 1940) (election of inconsistent remedy).

However, the *Carter* court rejected the argument that a decedent's agreement to arbitrate disputes bars litigation of any dependent wrongful death claims of her spouse or next of kin. *Carter*, 976 N.E.2d at 359. The court reasoned that limitations a decedent places on his own cause of action cannot overcome the fundamental common law contract law principle that parties are not bound to arbitrate where they have not agreed to do so. *Id.* "The FAA's policy favoring arbitration does not alter these principles." *Id.* In *Carter*, the only signatories to the arbitration agreement were the decedent and the defendant nursing home. *Id.* at 359-60. Consequently, the estate's Survival Act claims were subject to arbitration pursuant to the arbitration clause, but the wrongful death claims were not. *Id.* at 360. The upshot of *Carter* is that, as a matter of state law, the WDA's requirement that the decedent "would, if death had not ensued, [have been able] to maintain an action and recover damages" is satisfied even where the decedent agreed to

arbitrate his own personal injury claim. *See id.* So long as the decedent still has a live claim that might entitle her to recover damages, the WDA act is satisfied, even if the decedent had committed those claims to arbitration.

All parties essentially agree that under the *Carter* rule, Cole's Survival Act claims must be sent to arbitration, but her WDA claims on behalf of herself and Curtis Cole's next of kin may be litigated despite the arbitration agreement. But the defendants claim *Carter*'s rule cannot stand in light of a later United States Supreme Court opinion.

      B.     <u>Kindred</u>

More recently, the United States Supreme Court decided *Kindred Nursing Centers Ltd. Partnership v. Clark*, 137 S. Ct. 1421 (2017), involving a similar dispute between two plaintiffs suing Kindred, a nursing home in Kentucky, over the death of residents in its care. There, agents with general, comprehensive powers of attorney signed identical arbitration agreements on behalf of the residents when they were admitted into the nursing home. *Kindred*, 137 S. Ct. at 1425. The powers of attorney did not expressly grant authority for their respective agents to waive the right to a trial by jury by agreeing to arbitrate. When the residents died, their estates sued Kindred for causing the deaths, and Kindred moved to enforce the arbitration agreements. *Id.* at 1425. A Kentucky court held that because the powers of attorney did not specifically authorize the agents to waive the fundamental right to trial granted by the Kentucky Constitution, the arbitration agreements violated Kentucky's public policy and were unenforceable. *Id.* at 1426.

The United States Supreme Court overruled this conclusion. It held that the special "clear-statement" rule of Kentucky law—the requirement of an express delegation of authority in a power of attorney to agree to arbitration—unlawfully singled out arbitration agreements for

different treatment from other agreements, and that this different treatment violated the FAA. *Id.* at 1426-27. Accordingly, Kentucky's requirement—or any other state rule that relies on the uniqueness of an arbitration agreement as its basis—could not invalidate an otherwise enforceable arbitration agreement. *Id*. at 1426.

C. Application

The defendants claim the *Carter* rule cannot stand in light of *Kindred*. The Court disagrees. *Carter* relied on a fundamental principle of contract law that in no way depended on the nature of the decedent's agreement as an arbitration clause. That fundamental principle— that a party to an agreement cannot bind a non-party—applies to all sorts of agreements. Indeed, had the decedent's agreement been about choice of law, judicial forum, allocation of costs and fees, confidentiality, or any number of standard contract provisions, the results would have been the same. Curtis Cole could not have bound his personal representative to those agreements for her wrongful death claims. The application of this rule did not depend in any way on the agreement being one for arbitration, as it did in *Kindred*. *See also Marmet Health Care Ctr. v. Brown*, 565 U.S. 530, 532-33 (2012) (finding FAA preempts state policy prohibiting pre-dispute arbitration agreements for personal injury or wrongful death claims against nursing homes).

Furthermore, the *Carter* rule does not impermissibly treat contracts to release claims differently from contracts to arbitrate claims. It is true the WDA requires that a decedent have had the ability "to maintain an action and recover damages" for his injury from the same person he had not died. *See* 740 ILCS 180/1. But *Carter* implicitly interpreted this requirement simply to mean that the decedent had some underlying claim against the defendant for damages when he died, not that the claim was able to be litigated in a court. *See Carter*, 976 N.E.2d at 359.

Under this interpretation, a decedent's pre-death release of his claims leaves the decedent

with no viable claims whatsoever—whether able to be litigated or compelled to be arbitrated—so the WDA requirement is not satisfied, and the surviving kin can have no wrongful death claim. *See Mooney v. City of Chi.*, 88 N.E. 194 (Ill. 1909). Similarly, a pre-death personal injury judgment awarding relief to the decedent resolves his claims, and he has no claim left at his death to support a wrongful death claim. *See Varelis v. Nw. Mem'l Hosp.*, 657 N.E.2d 997, 1000 (Ill. 1995). However, where the decedent has not done something to resolve—and extinguish—his claims before his death, they can still support a wrongful death action under 740 ILCS 180/1.

So while it is true that the *Carter* rule results in a different outcome depending on whether the decedent has a claim for damages when he dies, the outcome is not dependent on whether that claim is able to be litigated or must be arbitrated. The distinction is whether a pre-death claim exists, not the forum in which it must be resolved. It is simply because the decedent no longer satisfies the WDA's condition precedent when he has *no* claims, but he has *some* claim even after an agreement committing it to arbitration.

**III.    Conclusion**

As explained above, Cole's claims under the Survival Act are subject to Curtis Cole's arbitration agreement but her claims under the WDA are not. This conclusion does not impermissibly treat an agreement to arbitrate differently than other contracts because of its nature as an arbitration agreement. Therefore, enforcement of Illinois law in this regard does not violate the FAA.

For the foregoing reasons, the Court:

- **GRANTS in part** and **DENIES in part** the defendants' motion to compel arbitration (Doc. 7);

- **COMPELS**, pursuant to 9 U.S.C. § 4, Cole to arbitrate her claims brought under the Survival Act (Counts I, II, & V) pursuant to the Agreement;

- **STAYS** Counts I, II, & V until arbitration has been had in accordance with the terms of the Agreement.  All other claims in this case (Counts III & IV) shall proceed as scheduled; and

- **ORDERS** Cole to file a status report in September 2022, and every March and September thereafter until the arbitration is complete, and to file a final status report within 30 days of the completion of the arbitration.

**IT IS SO ORDERED.**
**DATED:  May 2, 2022**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**